**ASSOCIATED BUILDERS & CONTRACTORS, INC., et al., Plaintiffs,**

v.

**Robert REICH, et al., Defendants.**

**Civ. A. No. 95–02377 (CRR).**

United States District Court, District of Columbia.

April 9, 1996.

Maurice Baskin, Attorney, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, for plaintiffs.

Darya Geetter, Assistant United States Attorney, and Eric H. Holder, Jr., United States Attorney; of counsel are Thomas S.

Williamson, Jr., Solicitor of Labor, Charles D. Raymond, Associate Solicitor for Employment and Training Legal Services, Gary E. Bernstecker and Herman J. Narcho, Washington, DC, for defendants.

Terry R. Yellig, Attorney, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, for amicus curiae.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court in the above-captioned case are the parties' cross-motions for summary judgment. The plaintiffs Associated Builders & Contractors, Inc. ("ABC"), Grinnell Fire Protection Systems Corp. ("Grinnell"), and a number of employees of Grinnell have sued the Secretary of Labor and the Director of the Bureau of Apprenticeship and Training ("BAT") at the Department of Labor ("DOL"), challenging policies adopted by the BAT, specifically, BAT Circular 95–06, issued on April 24, 1995, and a July 12, 1995 policy statement by BAT Director Anthony Swoope. The Building and Construction Trades Department, AFL–CIO, has entered an appearance as *amicus curiae* and has filed a brief in support of the defendants' motion for summary judgment and in opposition to the plaintiffs' motion for summary judgment.

Based on the pleadings, the entire record herein, the law applicable thereto, and for the reasons expressed below, the Court shall grant the plaintiffs' motion for summary judgment. The defendants' actions constitute legislative, as opposed to interpretative rule making and, thus, required notice and comment prior to promulgation. Therefore, in accordance with the mandate of *National Family Planning & Reproductive Health Assoc. v. Sullivan*, 979 F.2d 227 (D.C.Cir. 1992), the Court shall enjoin the defendants from enforcing the new policies encompassed in BAT Circular 95–06 and the June 12, 1995 policy statement until and unless they are adopted in a notice and comment rule making.

## BACKGROUND

Pursuant to the National Apprenticeship Act, the Secretary of Labor is authorized and directed to

formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices,[1] to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship....

29 U.S.C. § 50. Accordingly, the Secretary has promulgated implementing regulations covering, *inter alia,* the registration, cancellation, and deregistration of apprenticeship programs through the BAT. *See* 29 C.F.R. Part 29.

In 23 states, apprenticeship programs are registered and monitored through the BAT. In the remaining states and the District of Columbia, the BAT has delegated its authority to register and monitor apprenticeship programs to a recognized State Apprenticeship Agency or Council ("SAC"). St. of Mat'l Facts not in Dispute ¶ 7. To register a program with either the BAT or a SAC ("registration agency"), a sponsor [2] may designate an "apprenticeship committee," to administer the program. 29 C.F.R. § 29.2(i). A committee may be "joint," i.e., composed of an equal number of representatives of the employer(s) and of the employees represented by a bona fide collective bargaining agent(s). A committee also may be "unilateral" or "non-joint," i.e., a program sponsor in which a bona fide collective bargaining agent is not a participant. 29 C.F.R. § 29.2(i).

Regardless of who administers an apprenticeship program, it must conform to regulatory standards. 29 C.F.R. § 29.5. And, any modification or change to a registered program first must be submitted to an appropriate registration agency for approval. 29 C.F.R. § 29.3(g).

Whenever a sponsor seeks the registration of an apprenticeship program in any state, it must first meet the eligibility requirements of 29 C.F.R. § 29.3. The eligibility requirements include a provision regarding a union's right to comment on a program proposed by an employer for registration:

(h) Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgment of union agreement or *no objection* to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union, if any, which is the collective bargaining agent of the employees to be trained, a copy of its application for registration and of the apprenticeship program. The registration agency shall provide a reasonable time period of not less than 30 days nor more than 60 days for receipt or union comments, if any, before final action on the application for registration and/or approval.

29 C.F.R. § 29.3(h).

On December 14, 1983, the BAT issued Circular 84–10 to "set forth policies regarding actions taken on requisition for approval

---

1. An "apprentice" is a worker at least 16 years old who is employed to learn a skilled trade that has the following characteristics:

    (a) It is customarily learned in a practical way through a structured, systematic program of on-the-job supervised training.

    (b) It is clearly identified and commonly recognized throughout an industry.

    (c) It involves manual, mechanical or technical skills and knowledge which require a minimum of 2,000 hours of on-the-job work experience.

    (d) It requires related instruction to supplement the on-the-job training.

29 C.F.R. §§ 29.2 and 29.4.

2. "Sponsor" is defined in the regulations as "any person, association, committee, or organization operating an apprenticeship program and in whose name the program is (or is to be) registered or approved." 29 C.F.R. § 29.2(g). Under the regulations, an "apprenticeship committee" may also be a sponsor.

of unilateral programs involving labor disputes." BAT Circular 84–10. BAT Circular 84–10 is attached hereto as Appendix A, and is incorporated herein by reference the same as if herein written.[3]

On April 24, 1995, the BAT issued Circular 95–06, to "provide supplemental guidance regarding registering unilateral apprenticeship programs during labor disputes [as a supplement to] Circular 84–10, December 14, 1983, and 84–10 (Modification), January 16, 1984." BAT Circular 95–06. BAT Circular 95–06 is attached hereto as Appendix B, and is incorporated herein by reference the same as if herein written.

By letter dated June 2, 1995, counsel for Grinnell asked the DOL how it would apply BAT Circular 95–06 in the context of its strike with the Road Sprinkler Fitters Local Union No. 669 ("Local 669"). (Letter from Rosenthal to Raymond of 6/2/95, at 1.) Grinnell informed the DOL that it had replacement employees who wished to register for training in one of ABC's apprenticeship programs. The letter failed to advise the DOL that Local 669 had filed an unfair labor practice charge against Grinnell. Based on that charge, the National Labor Relations Board ("NLRB") issued a complaint against Grinnell, alleging that Grinnell had failed to bargain to impasse and that Grinnell had made a number of changes to the terms and conditions of employment unilaterally and illegally. In a response dated July 12, 1995, BAT Director Anthony Swoope informed Grinnell's counsel that

> [a]n employer would be precluded from participating in a program if it has failed to bargain to impasse and the union objects. Such would be the case if the union, or some other entity, advises BAT that the NLRB has filed a complaint against the employer finding that it has failed to bargain to impasse. Under these circumstances, BAT would not approve the registration of the unilateral program.

(Letter from Swoope to Rosenthal of 7/12/95, at 2.)

The plaintiffs filed the above-captioned case on December 26, 1995, alleging that the policies encompassed in BAT Circular 95–06 and the July 12, 1995 policy statement "depart without explanation from previously established Department precedent and are inconsistent with published regulations regarding apprenticeship training." Plaints' Mot. for Summ.Jud. at 1–2. These policies, according to the plaintiffs, violate the National Apprenticeship Act ("Act"), 29 U.S.C. § 50, the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, the Davis–Bacon Act, 40 U.S.C. § 276a, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701. The plaintiffs now move for summary judgment.[4] The defendants cross-move for summary judgment that their actions were reasonable and are due deference by the Court; that the defendants are reasonably deferring to the expertise of the NLRB; that there is no violation of the Davis–Bacon Act; and that their actions were not arbitrary, capricious, or otherwise contrary to law under the APA.

## DISCUSSION

Summary Judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, as the parties agree, there are no genuine issues of material fact in dispute and the above-captioned case is ripe for determination as a matter of law. Because the Court concludes that the defendants' actions constituted legislative, as opposed to in-

---

**3.** BAT Circular 84–10 was amended on January 16, 1984 in a way not material to the present case.

**4.** On January 11, 1996, the plaintiffs filed a Motion for Preliminary Injunction. By Order of the Court, dated January 29, 1996, and upon consent by the parties, the plaintiffs' Motion for Prelimi-

nary Injunction was consolidated with a determination on the merits pursuant to Rule 65 of the Federal Rules of Civil Procedure. *See Associated Builders & Contractors, Inc. v. Reich*, Civ. Action No. 95–2377 (CRR) (D.D.C. Jan. 29, 1996) (Order).

terpretative, rule making and, thus, required notice and comment prior to promulgation, the Court need not address the parties' alternative contentions.

## THE DEFENDANTS' ACTIONS CONSTITUTE LEGISLATIVE, AS OPPOSED TO INTERPRETATIVE RULE MAKING AND, THUS, REQUIRED NOTICE AND COMMENT PRIOR TO PROMULGATION.

■ The plaintiffs argue that the defendants' actions violate the APA in that they constitute an arbitrary and capricious departure without explanation from previously existing published policies or regulations and that they so depart from established policy as to create a new substantive rule subject to the notice and comment provisions of the APA. The defendants counter that their actions are not arbitrary or capricious and do not require notice and comment because they amount to an "interpretative rule making." To resolve this dispute, the Court is guided by the principles expressed in *National Family Planning & Reproductive Health Assoc. v. Sullivan*, 979 F.2d 227 (D.C.Cir. 1992).

In *National Family Planning*, the plaintiffs brought suit against the Secretary of the Department of Health and Human Services ("HHS"), asserting that the process by which certain HHS directives were adopted did not comply with the notice and comment provisions of the APA, and that the new policy embodied in the directives was arbitrary and capricious. The Court noted that an agency is free to alter the interpretative and policy views reflected in regulations construing an underlying statute as long as any changed construction of the statute is consistent with express congressional intent or embodies a "permissible" reading of the statue and is otherwise "reasonable." *National Family Planning*, 979 F.2d at 231 (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) and *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). On review of the District Court's determination that the HHS directives constituted legislative, as opposed to interpreta-

tive rule making, and thus required notice and comment prior to promulgation, the Court of Appeals declined to decide whether the agency's revised interpretation of the statute was permissible under *Chevron* or was reasonable under *State Farm*. Instead, the Court confined its review to the more limited administrative law issue whether HHS followed the proper procedure in implementing the change.

The APA sets forth the proper procedure:

(b) General notice of proposed rule making shall be published in the Federal Register.... Except when notice or hearing is required by statute, this subsection does not apply—

> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice....

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

5 U.S.C. 553. Under the APA, a "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency...." 5 U.S.C. 551(4). Neither party disputes that the defendants' actions here constitute a "rule making" within the meaning of the APA; rather, the parties dispute the characterization of that rule making as "legislative," on the one hand, or "interpretative," on the other.

■ The label that the agency puts on its given exercise of administrative power is not conclusive; rather it is what the agency does in fact. *National Family Planning*, 979 F.2d at 237. As explained in *National Family Planning*, interpretative rules are those which clarify statutory or regulatory terms, explain existing law, and remind par-

ties of existing duties under the law; whereas legislative rules accomplish more than that. *Id.* at 236–37. For example, "a rule is legislative if it attempts 'to supplement [a statute], not simply to construe it.'" *Id.* at 237 (quoting *Chamber of Commerce v. Occupational Safety & Health Admin.,* 636 F.2d 464, 469 (D.C.Cir.1980)). Rules are legislative when they fill in gaps and resolve inconsistencies left by statute. *See Citizens to Save Spencer County v. Environmental Protection Agency,* 600 F.2d 844, 876 n. 153 (D.C.Cir.1979). Rules that "effect a change in existing law or policy," *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir. 1983), or "grant rights, impose obligations, or produce other significant effects on private interests," *Batterton v. Marshall,* 648 F.2d 694, 701–02 (D.C.Cir.1980), are legislative. Rules are legislative if they finally determine rights to which they are addressed and do not leave the agency free to exercise discretion. *American Bus Assoc. v. United States,* 627 F.2d 525 (D.C.Cir.1980).

Before the agency took the actions complained of here, its policy with respect to registering apprenticeship programs was set forth in 29 C.F.R. 29.3(h) and BAT Circular 85–10. Section 29.3(h) provides for union participation in registering an apprenticeship program. Specifically, the regulation provides for written acknowledgment or no objection from the union when union participation in an apprenticeship program is provided for and exercised. When no union participation is evidenced and practiced, the regulation requires an employer to furnish to the union a copy of its application for registration, and the registration agency is required to provide an opportunity for union comments before taking final action on the application. *See* 29 C.F.R. 29.3(h).

BAT Circular 85–10 addressed actions taken on requisition for approval of unilateral programs involving labor disputes. *Inter alia,* Circular 85–10 provides that registration is not to be denied solely on the basis of a labor dispute and, if an agreement between an employer and a union has terminated, an employer's unilateral request for approval is to be considered on its own merits without requiring labor concurrence.[5]

With these specific policies in place, on April 24, 1995 the DOL issued BAT Circular 95–06. On its face, BAT Circular 95–06 did not purport to interpret or construe the existing policies; rather, its *express* purpose was "[t]o provide *supplemental guidance* regarding registering unilateral apprenticeship programs during labor disputes" and to provide "*additional guidance and procedures* to be followed (emphasis added)...." In fact, along with providing some interpretation of existing policy, the BAT Circular did just that.

Circular 95–06 provides, in the paragraphs numbered 1 and 2, that, under certain circumstances, a registration agency must raise the issue of registration with the union before registering a unilateral program, a procedural obligation on the registration agency that had not been expressed in section 29.3(h) or BAT Circular 85–10. In the June 12, 1995 policy letter, Director Swoope reiterated a registration agency's affirmative duty pursuant to BAT Circular 95–06 to determine whether the union has the right to object to and block the proposed apprenticeship program. Moreover, the letter stated: "An employer would be precluded from participating in a program if it has failed to bargain to impasse and the union objects. Such would be the case if the union, or some other entity, advises the BAT that the NLRB has filed a complaint against the employer finding that it has failed to bargain to impasse. Under these circumstances, BAT would not approve the registration of the unilateral program."

The above-mentioned policy announced in BAT Circular 95–06 and the June 12, 1995 policy letter constitute legislative rules. They have the stated purpose of "supplementing," not "interpreting," existing policy and procedures. The rules, in fact, fill in a gap in former policy recognized by the DOL,

**5.** A memorandum dated August 1, 1983 from William G. DuRoss, III, Associate Solicitor for Employment and Training to Joyce A. Kaiser, Associate Assistant Secretary for Employment and Training, noted that under certain circumstances, a union involved in a labor dispute could prevent the registration of an employer's apprenticeship program.

that is, they address the situation where an employee may have failed to bargain to impasse. Furthermore, the rules impose new obligations on registration agencies. Finally, the rules remove agency discretion under certain circumstances, setting forth a rule of ineligibility when the NLRB has filed a complaint against the employer.

While these rules may be perfectly permissible and reasonable ones, they constitute legislative rule making, which requires notice and comment under the APA. Because the Court must set aside the agency action for this reason, the Court does not reach the challenges to the agency action under the National Apprenticeship Act, the National Labor Relations Act, and/or the Davis–Bacon Act.

### CONCLUSION

For the above reasons, the plaintiffs' motion for summary judgment shall be granted and the defendants' motion for summary judgment shall be denied. The defendants shall be enjoined to the extent that the new policies encompassed in BAT Circular 95–06

and the June 12, 1995 policy statement may not be enforced until and unless they are adopted in a notice and comment rule making. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 8 day of April, 1996,

ORDERED that the plaintiffs' Motion for Summary Judgment shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the defendants' Motion for Summary Judgment shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the defendants shall be enjoined to the extent that the new policies encompassed in BAT Circular 95–06 and the June 12, 1995 policy letter may not be enforced until and unless they are adopted in a notice and comment rule making.

## ATTACHMENT A

Circular 84-10                              December 14, 1983

| U.S. DEPARTMENT OF LABOR EMPLOYMENT AND TRAINING ADMINISTRATION  Bureau of Apprenticeship and Training Washington, D.C. 20213  Symbols: TDTD:MRM | Distribution:  A-339 All Tech. Hdqtrs.  A-547 SD+RD/DXD +SAC;Lab.Com. | SUBJECT:              CODE: 450  Registering Unilateral Apprenticeship Programs During Labor Disputes |
|---|---|---|

FILED

APR 09 1996

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

PURPOSE:  To set forth policies regarding actions taken on requisition for approval of unilateral programs involving labor disputes.

BACKGROUND:  The Associated General Contractors of America (AGC), has raised questions to the Bureau of Apprenticeship and Training (BAT) regarding requests to State Apprenticeship Councils (SACs) for registration of unilateral programs and the refusal of BAT/SAC to register a unilateral program for a contractor involved in a labor dispute.  These questions were submitted to the Department of Labor Solicitor requesting opinions on those questions.  A copy of that request dated June 30, 1983, is attached.

The Associate Solicitor provided opinions on those questions in a memorandum dated August 1, 1983, from Mr. William H. DuRoss, III.  A copy of that memorandum is attached.

ACTION:  The statement of opinions from the Solicitor has been reviewed and discussed, jointly, by representatives of NASTAD, BAT National Office, and BAT Regional Directors.  The following policies emanated from those discussions and are issued for guidance in such cases:

   o The denial of registration of an apprenticeship
     program by either the BAT or a SAC solely on the
     basis of a labor dispute would result in an economic
     sanction against the requesting employer since the
     employer does not have any alternative method for
     obtaining the requested action.  Therefore, a request
     from a potential sponsor for approval of an appren-
     ticeship program on the sole basis that a labor
     dispute exists should not be disapproved on that
     basis alone, and the following policies are to be
     followed in acting on such requests.

   o If the agreement between an employer and a union
     has terminated, a request for approval of an appren-
     ticeship program from an employer on a unilateral
     basis should be considered on its own merits with-
     out requiring labor concurrence.

o If the agreement has not terminated, the consent of the union is required before a proposed unilateral apprenticeship program can be considered for registration.

o In the event an actual labor dispute exists at the employer's work place, each request for registration of an apprenticeship program must be considered on the provisions of the National Apprenticeship Act which directs the Secretary of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices.

o When it appears that a SAC has denied registration of a unilateral apprenticeship program expressly because of a labor dispute, the Regional Director should bring the incident to the attention of the BAT Director along with supporting documentation. Note also in the attached Solicitor's opinion that BAT regulations do not provide for a SAC to deny registration of a unilateral apprenticeship program because of a lack of funds or opposition to unilateral programs. These incidents along with supporting documentation, likewise, should be called to the attention of the BAT National Office.

U.S. Department of Labor

Office of the Solicitor
Washington, D.C. 20210

AUG. 1 1983

MEMORANDUM FOR:    JOYCE A. KAISER
Associate Assistant Secretary
for Employment and Training

FROM:    WILLIAM H. DuROSS, III
Associate Solicitor for
Employment and Training

SUBJECT:    Registering Unilateral Apprenticeship
Programs During Labor Disputes

This is in response to your request for an opinion as to
the proper policy to follow where a State Apprenticeship
Council (SAC) refuses to register a unilateral apprentice-
ship program because of a lack of funds or opposition to
unilateral programs. You also requested our opinion whether
the Bureau of Apprenticeship and Training (BAT) should deny
registration where the contractor sponsoring a unilateral
program is involved in a labor dispute.

We believe that under the BAT regulations, 29 CFR Part 29,
neither BAT or a SAC may deny registration of an apprentice-
ship program on the basis of a labor dispute. The BAT regula-
tions generally make no provision for considering the existence
of a labor dispute. In this regard, we note that the regula-
tions of the Employment Service System (ESS), 20 CFR 653.9,
provide that State employment agencies shall make no job
referrals on job orders which will aid in the filling of
a job opening at issue in a labor dispute. Accordingly,
the ESS regulations specifically provide for a response
to labor disputes; the BAT regulations do not. Therefore,
it would be inappropriate for BAT or a SAC to consider the
existence of a labor dispute in determining whether to register
a program. If, as a matter of policy, you wish labor disputes
to be considered, we suggest you amend the BAT regulations
accordingly.

14 AUG 1983
OLE7-12
8/:

Further, by not considering the labor dispute, BAT, or the SAC, would be limiting its involvement in the dispute to the extent that that is possible. Where a State employment agency refuses to make referrals which would aid in the filling of a job opening at issue in a labor dispute, the effect on an employer would be small; the employer can obtain employees elsewhere. However, if registration of an apprenticeship program is denied on the basis of a labor dispute, this would be an economic sanction depriving the employer of sub-minimum wage apprentices. On the other hand, by not considering the existence of the labor dispute, the SAC or BAT would be affording the employer little or no aid in the dispute. Rather, the SAC or BAT would be declining to sanction the employer on account of the dispute.

We do note however, that under certain circumstances, a union involved in a labor dispute could prevent the registration of the employer's apprenticeship program. Paragraphs 29.3(h) and 29.12(b)(10) of 29 CFR provide that where an employer proposes an apprenticeship program for registration, and the union participates in the operation of the program in accordance with the collective bargaining agreement, the consent of the union to the registration is required. Accordingly, a union involved in a labor dispute may be able to use this provision against the employer. However, in this situation, BAT, or the SAC, would be merely honoring the terms of the collective bargaining agreement.

Lastly, we note that the BAT regulations do not provide for a SAC to deny registration of a unilateral apprenticeship program because of a lack of funds or opposition to unilateral programs. Accordingly, if a SAC denies registration of a program for either reason, or because of a labor dispute, the SAC would not be operating in conformity with the BAT regulations. BAT's appropriate response would be to withdraw recognition for Federal purposes of the SAC in accordance with 29 CFR 29.13. The regulations would appear to preclude BAT from registering programs where a BAT-recognized SAC exists.

Circular 84-10 (Modification)                                    January 16, 1984

| U.S. DEPARTMENT OF LABOR EMPLOYMENT AND TRAINING ADMINISTRATION Bureau of Apprenticeship and Training Washington, D.C. 20213 Symbols: TDTD/MMW | Distribution: A-539 All Tech. Hdqtrs. A-547 SD+RD/DRD +SAC;Lab.Com. | SUBJECT:                    CODE: 450 Registering Unilateral Apprenticeship Programs During Labor Disputes |
|---|---|---|

PURPOSE:  To modify the first paragraph of the ACTION section of BAT Circular 84-10, issued December 14, 1983.  The modification is based upon comments from Donald J. Grabowski, Pres., NASTAD.

ACTION:  The first paragraph of the ACTION section of Circular 84-10 is changed to read as follows:

"ACTION:  The statement of opinions from the Solicitor has been reviewed and discussed, jointly, by representatives of NASTAD, BAT National Office, and BAT Regional Directors.  The following BAT policies emanated from those discussions and are issued for guidance of BAT staff in such cases":

The subsequent paragraphs of this section in Circular 84-10 remain as originally issued under date of December 14, 1983.

## ATTACHMENT B

| CIRCULAR 95 - 06 | | DATE: April 24, 1995 |
|---|---|---|
| U.S DEPARTMENT OF LABOR EMPLOYMENT AND TRAINING ADMINISTRATION<br><br>Bureau<br>of Apprenticeship and Training<br>Washington D.C. 20210 | Distribution<br><br>A-541<br>A-544<br>A-547 | Subject:     Code:450<br><br>Registering Unilateral Apprenticeship Program During Labor Disputes |
| Symbols: TW:NK | | Action: |

PURPOSE: To provide supplemental guidance regarding registering unilateral apprenticeship programs during labor disputes.
NOTE: This circular supplements Circular 84-10, December 14, 1983, and 84-10 (Modification), January 16, 1984.

BACKGROUND: An issue arose recently which caused us to seek additional guidance from the Solicitor's Office (SOL) regarding our position on the subject matter. Based upon our consultation with the SOL our policy as stated in Circulars 84-10 and 84-10 (modification) remains in effect. However, this Circular provides additional guidance and procedures to be followed when such issues arise.

Title 29 CFR Part 29.3(h) provides that, "(u)nder a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgment of union agreement or no objection to the registration is required."

In some circumstances it can be difficult to determine if there are standards, a collective bargaining agreement, or other instrument effecting apprenticeship, which in turn effects a union's rights regarding the program. For example, there may be situations where an expired collective bargaining agreement continues in effect under the National Labor Relations Act. Thus, if the union remains the collective bargaining representative for the employees, the employer may not be permitted to change the terms and conditions of work established under the expired collective bargaining agreement without first bargaining with the union. An example of this may be a situation where the expired collective bargaining agreement provided for joint control of an apprenticeship program and the parties had not bargained to impasse.

ACTION:

1. If an employer requests the registration of a unilateral program and represents to the registration agency that there are no standards, a collective bargaining agreement, or other instrument which provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, the registration agency will treat the matter as one where there is no agreement but will raise the issue to the union. If the union does not dispute the facts alleged by the employer the registration agency may register the unilateral program.

-over-

2. If the union indicates that there are standards, a collective bargaining agreement or other instrument in effect which provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, the registration agency must determine whether, under the terms of .29 CFR 29.3 (h), the union has a right to object and thereby effectively block the proposed program. In this event, the registration agency shall request the union to submit documentation in support of its allegation. The registration agency may then consult with the National Office before making a determination.

3. Even if union participation in the apprenticeship program is not evidenced and practiced, an employer must submit to the union, if any, which is the collective bargaining agent a copy of its proposed standards for registration. The registration agency shall provide a reasonable time period of not less than 30 days nor more than 60 days for receipt of comments, if any, before final registration action.

4. Before a registration agency registers a unilateral program, where either the employer or the union alleges the existence of a labor dispute, the employer is to be advised that, under certain circumstances, they may be cited by the National Labor Relations Board (NLRB) for unfair labor practices for improperly changing an existing term or condition of work without bargaining with the proper collective bargaining representative. Accordingly, the employer should consider directly contacting the NLRB for further advice.