**ASSOCIATED BUILDERS & CONTRACTORS, INC., et al., Plaintiffs,**

**v.**

**Robert REICH, et al., Defendants.**

**Civil Action No. 96–2625(SS).**

United States District Court, District of Columbia.

May 28, 1997.

Maurice Baskin, John C. Hardwick, Jr., Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, for plaintiffs.

Darya Geetter, Assistant United States Attorney, Eric H. Holder, Jr., United States Attorney, for defendants; J. Davitt McAteer, Acting Solicitor of Labor, Charles D. Raymond, Associate Solicitor for Employment

---

and Training Legal Services, Gary E. Bernstecker and Herman J. Narcho, of counsel.

Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, Amicus Curiae Building and Construction Trades Department, AFL–CIO.

## MEMORANDUM OPINION

SPORKIN, District Judge.

### INTRODUCTION

Before the Court in the above-captioned case are the parties' cross-motions for summary judgment. A hearing was held on the cross-motions on May 12, 1997. Based on the pleadings, the arguments by counsel, the entire record herein, and the law applicable thereto, and for the reasons expressed below, the Court shall remand this matter to the defendant agency for further proceedings.

### BACKGROUND

The National Apprenticeship Act authorizes and directs the Secretary of Labor to

formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices,[1] to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship....

29 U.S.C. § 50. Accordingly, the Secretary has promulgated implementing regulations covering, *inter alia*, the registration, cancellation, and deregistration of apprenticeship programs through the Bureau of Apprenticeship and Training (BAT) and the Department of Labor (DOL). *See* 29 C.F.R. Part 29.

In 23 states, apprenticeship programs are registered and monitored through the BAT. In the remaining states and the District of Columbia, the BAT has delegated its authority to register and monitor apprenticeship programs to a recognized State Apprenticeship Agency or Council ("SAC"). To register a program with either the BAT or a SAC ("registration agency"), a sponsor[2] may designate an "apprenticeship committee," to administer the program. 29 C.F.R. § 29.2(i). A committee may be "joint," i.e., composed of an equal number of representatives of the employer(s) and of the employees represented by a bona fide collective bargaining agent(s). A committee also may be "unilateral" or "non-joint," i.e., a program sponsor in which a bona fide collective bargaining agent is not a participant. 29 C.F.R. § 29.2(i).

Regardless of who administers an apprenticeship program, it must conform to regulatory standards. 29 C.F.R. § 29.5. And, any modification or change to a registered program first must be submitted to an appropriate registration agency for approval. 29 C.F.R. § 29.3(g).

On December 14, 1983, the BAT issued Circular 84–10 to "set forth policies regarding actions taken on requisition for approval of unilateral programs involving labor disputes." BAT Circular 84–10. On April 24, 1995, the BAT issued Circular 95–06, to "provide supplemental guidance regarding registering unilateral apprenticeship programs during labor disputes [as a supplement to] Circular 84–10, December 14, 1983, and 84–10 (Modification), January 16, 1984." BAT Circular 95–06.

---

**1.** An "apprentice" is a worker at least 16 years old who is employed to learn a skilled trade that has the following characteristics:

   (a) It is customarily learned in a practical way through a structured, systematic program of on-the-job supervised training.

   (b) It is clearly identified and commonly recognized throughout an industry.

   (c) It involves manual, mechanical or technical skills and knowledge which require a minimum of 2,000 hours of on-the-job work experience.

   (d) It requires related instruction to supplement the on-the-job training.

29 C.F.R. §§ 29.2 and 29.4.

**2.** "Sponsor" is defined in the regulations as "any person, association, committee, or organization operating an apprenticeship program and in whose name the program is (or is to be) registered or approved." 29 C.F.R. § 29.2(g). Under the regulations, an "apprenticeship committee" may also be a sponsor.

In 1995, the BAT applied its Circular 95–06 to preclude the plaintiff Grinnell's apprenticeship program. The plaintiffs brought suit and the Court enjoined the DOL from enforcing the Circular on the ground that the Circular constituted a legislative rule that should have been published for notice and comment under the APA. *Associated Builders & Contractors, Inc. v. Reich*, 922 F.Supp. 676, 682 (D.D.C.1996). The DOL sought clarification of this decision and, in a subsequent Order, the Court ruled that the DOL was obligated "to make an ad hoc decision regarding registration of Grinnell based upon the applicable statutes, regulations, and policies in effect immediately prior to the issuance of Circular 95–06." The Court of Appeals affirmed this Court's Orders.

By letter dated May 30, 1996, as amended on June 10, 1996, the BAT issued its ad hoc decision, deferring further consideration of requests by Grinnell to register employees as apprentices until the National Labor Relations Board determines, in the context of its unfair labor practice proceeding, whether Grinnell has bargained to impasse with Local No. 669.[3]

The plaintiffs allege that the BAT's ad hoc decision violates the Administrative Procedures Act, 5 U.S.C. § 701, the National Apprenticeship Act, 29 U.S.C. § 50, the National Labor Relations Act, 29 U.S.C. § 158, and the Davis–Bacon Act, 40 U.S.C. § 276a. The plaintiffs seek to enjoin the BAT from enforcing its ad hoc decision and to compel the BAT to begin approving registration for Grinnell's employees as apprentices in its programs.

## DISCUSSION

■ In making its ad hoc decision, the BAT based its decision on its interpretation of 29 C.F.R. Part 29.3(h). That regulation provides

(h) Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgment of union agreement or "no objection" to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union, if any, which is the collective bargaining agent of the employees to be trained, a copy of its application for registration and of the apprenticeship program. The registration agency shall provide a reasonable time period of not less than 30 days nor more than 60 days for receipt or union comments, if any, before final action on the application for registration and/or approval.

29 C.F.R. § 29.3(h).

The plaintiffs contend that the ad hoc decision contravenes the plain language of section 29.3(h) because the decision allows a union to unilaterally block an employer from registering apprentices during a labor dispute. The defendants assert that their decision is consistent with section 29.3(h) because it prohibits an employer from unilaterally terminating a joint apprenticeship program that remains in effect due to the employer's failure to bargain to impasse.

After reading the papers and hearing from the parties in this case, it is clear that the defendant agency is caught up in the middle of a fight to the finish between Grinnell on the one hand and the union on the other. Unfortunately, as a result, the agency may be overlooking the interests of the intended beneficiaries of the National Apprenticeship Act.

As the Court reads the Act, it is an act "to safeguard the welfare of apprentices." 29 U.S.C. § 50. It was enacted to address the fact that young men and women employed in skilled grades were not receiving organized training, to the detriment of our Nation. The legislative history states:

[t]he economic progress of a great industrial nation such as ours is largely depen-

---

**3.** On January 16, 1996, the Administrative Law Judge found that the plaintiffs violated the National Labor Relations Act based on its failure to bargain to impasse, although no final board decision has been issued.

dent on the skill and genius of its work[ers]. It is surprising, therefore, that definite national steps had not been taken long ago to assure an adequate supply of skilled work[ers] and at the same time provide young people much-needed employment in the trades.

\* \* \* \* \* \*

The important bearing that the training of skilled workers has upon our social structure, especially with respect to relief, security, citizenship, crime, and national defense, was clearly indicated to the committee.

H.R. 945, 75th Cong., 1st Sess., at 2–3. With regard to employers and labor unions, the legislative history indicates that the Act was intended to bring those entities together for the benefit of apprentices and the Nation:

[t]here is a mutual interest between the employer and the workers in proper standards for apprenticeship. Distrust and suspicion often develop when either one or the other undertakes the training program alone. It was pointed out to the committee by employers and employees that industry and labor are being brought together ... in a most effective manner to work out and administer apprentice programs and that young people are being assisted thereby to secure training which fits them for profitable employment and responsible citizenship. The experience of this close cooperation between management and labor on questions of apprenticeship may be expected to influence beneficially other negotiations between management and labor, with consequent benefits to the whole Nation.

Id. at 3.

■ Thus, while Grinnell and the union have seen fit to use the provisions of the Act and its implementing regulations as a bargaining chip in their labor dispute, Congress clearly did not intend this result. The Act is neither pro-industry nor pro-labor union. It is pro-apprentice. The Court sees the actions of the plaintiffs and the labor union in this case as undermining the clear purpose of the Act.

■ Counsel for the defendants posit that the ad hoc decision indeed furthers the purpose of the Act and promotes the public interest. However, argument of counsel does not substitute for the reasoning of the defendant agency. Although an agency's decision may be accorded great deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), the agency must set forth the grounds for its decision. It is unclear, from this record, whether the agency itself gave appropriate consideration to the interests of apprentices and the public when it made its ad hoc decision. The agency may have done so, but the Court cannot perceive that from the record in this case.

Accordingly, the Court sees fit to remand this matter to the agency for reconsideration. If the agency considered the interests of the Act's intended beneficiaries and the neutral role it should play regarding the interests of both the employer and the labor union, it should say so. If the agency did not consider these various interests properly, it must do so.

## CONCLUSION

For the above reasons, the Court will remand this case to the agency for reconsideration in light of the foregoing. The parties' cross-motions for summary judgment will be dismissed as moot. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## ORDER

For the reasons set forth in the Memorandum Opinion of even date herewith, it is, by the Court, this 28 day of May, 1997,

ORDERED that the above-captioned case will be, and hereby is, REMANDED to the agency for reconsideration in accordance with said Memorandum Opinion; and it is

FURTHER ORDERED that the parties' cross-motions for summary judgment will be, and hereby are, declared MOOT.